COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
 2-08-115-CV

 

 

AZLE
MANOR, INC. AND                                                    APPELLANTS

AZLE MANOR I, L.L.C.

 

                                                      V.

 

HAROLD
R. VADEN, INDIVIDUALLY                                          APPELLEE

AND ON BEHALF OF THE
ESTATE OF 

JOYCE VADEN, DECEASED

 

                                                  ------------

 

             FROM THE 153RD
DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM OPINION[1]

 

                                                  ------------








In this interlocutory appeal, Appellants Azle
Manor and Azle Manor I, L.L.C. challenge the trial court=s order
denying their motion to dismiss Appellee Harold Vaden=s
medical malpractice claim for failure to file an adequate expert report under
civil practice and remedies code section 74.351.  We affirm in part and reverse and render in
part.

                                                Background

Appellants operate the Azle Manor nursing
home.  Vaden=s wife,
Joyce, was an Azle Manor resident.  Vaden
sued Appellants, alleging that they had negligently allowed Joyce to slip from
a shower chair and fall to the floor, breaking some of her bones.  According to Vaden, nursing home personnel
did not discover her fractures until several days after the accident, and Joyce
ultimately died from her injuries.

Vaden served Appellants with two expert reports,
one from Carol Massey, R.N. and the other from James Laughlin, D.O.  Massey=s report
addresses standards of care and the breach of those standards as they concern
the nurses at Azle Manor, but it does not mention Appellants.  Dr. Laughlin=s report
addresses only causation and does not mention Appellants.  Appellants moved to dismiss Vaden=s
claims, arguing that his expert reports did not satisfy the requirements of
section 74.351 of the civil practice and remedies code.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351
(Vernon Supp. 2008).  The trial court
denied Appellants= motion, and they filed this
interlocutory appeal.








                                                Discussion

In a health care liability claim, a claimant must
serve an expert report on each defendant no later than the 120th day after the
claim is filed.  Id. ' 74.351(a).  If the claimant does not serve an expert
report on a defendant physician or health care provider within the 120-day
period, then on the motion of the affected physician or health care provider,
the trial court must dismiss the claim with prejudice.  Id. ' 74.351(b).  The words Ahas not
been served@ include cases in which a report
has been served but found deficient by the trial court.  Lewis v. Funderburk, 253 S.W.3d 204,
207B08 (Tex.
2008).








A defendant may challenge the adequacy of a
report by filing a motion to dismiss. 
Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(l).  The trial court must grant the motion to
dismiss if it finds, after a hearing, that Athe
report does not represent an objective good faith effort to comply with the
definition of an expert report@ in the
statute.  Id.  While the expert report Aneed not
marshal all the plaintiff=s proof,@ American
Transitional Care Centers of Texas, Inc. v. Palacios, 46 S.W.3d 873, 878
(Tex. 2001) (construing former art. 4590i, ' 13.01),
it must provide a fair summary of the expert=s
opinions as to the Aapplicable standards of care,
the manner in which the care rendered by the physician or health care provider
failed to meet the standards, and the causal relationship between that failure
and the injury, harm, or damages claimed.@  Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(6).

To constitute a good-faith effort, the report
must Adiscuss
the standard of care, breach, and causation with sufficient specificity to
inform the defendant of the conduct the plaintiff has called into question and
to provide a basis for the trial court to conclude that the claims have merit.@  Palacios, 46 S.W.3d at 875.  A report does not fulfill this requirement if
it merely states the expert=s
conclusions or if it omits any of the statutory requirements.  Id. at 879.  But the information in the report Adoes not
have to meet the same requirements as the evidence offered in a summary‑judgment
proceeding or at trial.@ 
Id.  The claimant=s expert
must incorporate enough information to fulfill two purposes: (1) inform the
defendant of the specific conduct the plaintiff has called into question; and
(2) provide a basis for the trial court to conclude the claims are meritorious.  Id.








When reviewing the adequacy of a report, the only
information relevant to the inquiry is the information contained within the
four corners of the document.  Id. at
878.  This requirement precludes a court
from filling gaps in a report by drawing inferences or guessing as to what the
expert likely meant or intended.  See
id.  However, section 74.351 does not
prohibit experts, as opposed to courts, from making inferences based on
medical history.  Marvin v. Fithian,
No. 14‑07‑00996‑CV, 2008 WL 2579824, at *4 (Tex. App.CHouston
[14th Dist.] Jul. 1, 2008, no pet. h.); see also Tex. R. Evid. 703
(providing that expert may draw inferences from the facts or data in a
particular case), 705 (providing that expert may testify in terms of opinions
and inferences).








We review a trial court=s denial
of a motion to dismiss for an abuse of discretion.  Ctr. for Neurological Disorders, P.A. v.
George, 261 S.W.3d 285, 290B91 (Tex.
App.CFort
Worth 2008, no pet.).  To determine
whether a trial court abused its discretion, we must decide whether the trial
court acted without reference to any guiding rules or principles; in other
words, we must decide whether the act was arbitrary or unreasonable.  Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241B42 (Tex. 1985), cert. denied,
476 U.S. 1159 (1986).  Merely because a
trial court may decide a matter within its discretion in a different manner
than an appellate court would in a similar circumstance does not demonstrate
that an abuse of discretion has occurred. 
Id.  But a trial court has
no discretion in determining what the law is or in applying the law to the
facts, and thus Aa clear failure by the trial
court to analyze or apply the law correctly will constitute an abuse of
discretion.@ 
Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992); Ehrlich v.
Miles, 144 S.W.3d 620, 624 (Tex. App.CFort
Worth 2004, pet. denied).

1.             
Nurse
Massey=s Report

Massey=s report begins by stating that she
reviewed medical records from Azle Manor and Harris Methodist Northwest
Hospital, where Joyce was treated for her injuries.  According to Massey=s report, Joyce was admitted to the
Harris Northwest emergency room on September 22, 2005, as a result of Aunresolved pain@ from a fall at Azle Manor on
September 12.  Azle Manor=s records indicate that Joyce fell
from a shower chair.  A radiology report
states that Joyce had sustained fractures to her pelvis and sacrum and possibly
to the neck of her femur.  Massey states
that Harris Northwest discharged Joyce the same day and that she returned to
Azle Manor.  Joyce was readmitted to the
emergency room on November 6, 2005, due to gastrointestinal tract bleeding.

In
a section labeled AApplicable Standard of Care,@ Massey=s report quotes excerpts from the Nursing Practice Act.  See 22 Tex. Admin. Code Ann. '' 217.11B.12 (Vernon 2008).  In the next section of the reportCAApplicable Standard of Care as
Applied to the Case@CMassey sets out how, in her opinion,
the Azle Manor nursing staff violated the relevant provisions of the
administrative code:








The initial information documented in the Harris
Northwest Emergency Room Report, indicates that Ms. Vaden fell from a Abedside
commode,@ whereas the Azle Manor Transfer Record indicates that
she fell from a shower chair.  In either
case, based on these two sources, it appears that Ms. Vaden fell and was
injured.  Unless the injury was literally
allowed to happen it seems reasonable to believe that the appropriate safety
precautions were not implemented as the standard requires.  No report to the contrary has been provided
to me that would explain this situation in a more positive light.

 

. . . .

 

In this case implementation of a safety belt while
showering would have constituted the appropriate measure [to promote Joyce=s
safety].

 

. . . .

 

An assessment of the facts under this standard seems
to suggest that the standard was breached when Ms. Vaden fell from the shower
chair because it seems reasonable to infer that she would not have fallen in
either of the two scenarios presented had she been restrained or other safety
precautions had been instituted.

 

. . . .

 

Appropriate restraints would certainly have greatly
reduced the chances of Ms. Vaden falling whether on the commode or in the
shower chair.  As noted above, there are
no records indicating that such restraints were implemented.

 

. . . .

 








[I]f Ms. Vaden=s care was assigned to someone else who was incapable
of adequately caring for her or even someone who was but failed to do so and
the RN or RNs in charge failed to supervise those assigned then the RN or RNs
not only acted unprofessionally but also failed to meet the applicable standard
of care and, given Ms. Vaden=s injuries as a result of a fall, it seems entirely
reasonable to believe that she suffered as a result of these actions.

 

Massey=s report includes a section on
causation and ends with a summary of her qualifications, in which she states
that she is a registered nurse, is licensed to practice in Texas and several
other states, and has twenty years of professional nursing experience.

a.      Failure
to identify Appellants

Appellants
point to several alleged deficiencies in Massey=s report.  First, they
contend that her report is deficient because it does not identify the standard
of care and breach applicable to each Appellant.  Appellants rely on Bogar v. Esparza,
in which the Austin court of appeals recently held that a report that does not
identify a defendant at least in some manner within its four corners is, for
that reason alone, deficient as to that defendant because it would require the
reader to infer or make an educated guess as to whose actions the expert is
complaining.  257 S.W.3d 354, 364 (Tex.
App.CAustin 2008, no pet.).  In Bogar, the Austin court held that
the plaintiff=s expert report was deficient because
Ait does not identify in any way the
person or persons whose conduct is the subject of any of his opinions regarding
standard of care, causation, and death.@  Id.  But the court also noted that 








this is not a Amagic words@ test.  There
may be a number of ways that a defendant may be referenced within the four
corners [of] a report so as to comply with the legislature=s
mandate that the report Aprovide[ ] a fair summary as of the date of the report
regarding applicable standards of care, the manner in which the care rendered
by the physician or health care provider failed to meet the standards, and
the causal relationship between that failure and the injury, harm, or damages
claimed.@

 

Id. at n.1 (quoting Tex. Civ. Prac.
& Rem. Code Ann. ' 74.351(r)(6)); see also Austin
Heart, P.A. v. Webb, 228 S.W.3d 276, 282 (Tex. App.CAustin 2007, no pet.) (AWe are mindful that a report=s adequacy under section 74.351 does
not depend on whether the expert uses any particular magic words such as >the standard of care was breached by
Dr. Kessler.=@).








Moreover,
when a plaintiff asserts a claim for vicarious liability against a corporate
healthcare defendant, the plaintiff=s expert report need not mention the corporate defendant by
name.  Univ. of Tex. Sw. Med. Ctr. v.
Dale, 188 S.W.3d 877, 879 (Tex. App.CDallas 2006, no pet.). 
In Dale, the plaintiff based his claims against the defendant hospital
entirely upon the actions of its resident physicians and did not assert a claim
for direct negligence against the hospital. 
Id.  Noting that Awhat is relevant for purposes of the
expert report is that the report specifically identify the person whose conduct
the plaintiff is calling into question and show how that person=s conduct constituted negligence,@ the court held that the plaintiff=s expert reportCwhich did not mention the corporate
defendant by name and focused on the alleged negligence of the resident
physiciansCcomplied with the requirements of
section 74.351.  Id.  If the report identifies conduct by the
hospital=s employee, the hospital is
implicated, and as long as the report adequately addresses the standard of care
applicable to the employee, how the employee breached the standard of care, and
that the breach caused the plaintiff=s injury, it is sufficient to satisfy the expert report
requirement for the vicarious liability claims against the hospital. Id.;
see also Casados v. Harris Methodist H‑E‑B, No. 02‑05‑00080‑CV,
2006 WL 2034230, at *4 (Tex. App.CFort Worth July 20, 2006, no pet.) (mem. op.) (holding
plaintiff satisfied expert report requirements with respect to vicarious
liability claims by filing expert report detailing negligence of doctors, for
whose actions hospital was liable).








In
this case, Vaden asserts claims for both direct negligence and vicarious
liability against Appellants: APlaintiff would show that the damages
that he and Mrs. Vaden sustained were a direct and proximate consequence of the
negligence of Defendants and Defendants= agents, servants, and
employees. . . . According to the doctrine of respondeat
superior, Azle Manor are [sic] responsible for the negligent act of its agents
and employees.@ 
Plaintiff=s amended petition enumerates two
specific acts of negligenceCfailing to strap Joyce into the chair
and failing to monitor Joyce while she was in the chairCthat appear to be directed at
Appellants= employees, but a third enumerated
instance of negligenceCAfailing to act as an ordinary prudent
person would have under the same or similar circumstances@Cis broad enough to encompass a claim
for direct liability against Appellants, and the words Aamong other things@ preceding the enumerated list leave
the door open for further allegations of direct liability against Appellants.








Massey=s report does not mention Appellants
by name.  Instead, like the report in Dale,
her report focuses on the alleged negligence of Appellants= employees.  Assuming for the moment that Massey=s report adequately addresses the
standard of care applicable to Appellants= employees, how the employees breached the standard of care,
and how the breach caused the plaintiff=s injury, we hold that the report is sufficient to satisfy
the expert report requirement for the vicarious liability claims against
Appellants.  See Dale, 188 S.W.3d
at 879.  But her report is inadequate
with regard to Vaden=s direct liability claims because it
does not mention Appellants, let alone describe the standards of care
applicable to them directly or how Appellants breached those standards, and as
we have already noted, Dr. Laughlin=s report does not discuss standards of care or breach of
those standards at all.  See Bogar,
257 S.W.3d at 364.  We therefore hold
that the trial court erred by denying Appellants= motion to dismiss with regard to Vaden=s direct liability claims.[2]  See Methodist Charlton Med. Ctr. v. Steele,
No. 05‑07‑01762‑CV, 2008 WL 3844557, at *4 (Tex. App.CDallas Aug. 19, 2008, no pet.)
(reversing trial court=s denial of hospital=s motion to dismiss with regard to
plaintiff=s direct-negligence claims but
affirming denial with regard to vicarious liability claims when plaintiff=s expert report addressed only
vicarious liability claims).

b.      Standard
of care








Next,
Appellants argue that Massey=s report does not adequately identify
the standards of care regarding Appellants= nursing staff. 
Appellants contend that the Nursing Practice Act, which Massey=s report quotes, is too general to
establish a standard of care in an expert report, citing Singleton v.
Northwest Texas Healthcare System, No. 07‑03‑00552‑CV,
2006 WL 468747, at *3 (Tex. App.CAmarillo Feb. 28, 2006, no pet.) (mem. op.).  In Singleton, the Amarillo court held
that recitations from the Nursing Practice Act similar to the recitations in
Massey=s report Aare too general to identify a
standard of care applicable to [the defendant hospital] or how [the hospital]
breached that standard of care.@ 
Id.  However, the court
noted that A[t]he report comes closer to stating
a standard of care with its statement that [the patient=s] score on the fall risk assessment
required [the hospital] to implement >fall precautions= . . . [b]ut the report does not tell the defendant and court
what >fall precautions= are.@  Id.  The court held that the report was inadequate
because it Afails to inform [the hospital] of the
specific conduct [the patient] has called into question.@ 
Id. (citing Palacios, 46 S.W.3d at 879).  Significantly, Singleton does not hold
that the Nursing Practice Act can never be used to establish a standard of
care; it simply held that the report in that case, which relied in part on
excerpts from the Act, did not set out the standard of care with sufficient
specificity.








Although
Massey=s report quotes some of the same
sections of the Nursing Practice Act as the report in Singleton, the
cases are distinguishable.  Unlike the
vague report in Singleton, Massey=s report points out the specific conduct Vaden has called
into question, namely, Appellants= nurses= failure to secure Joyce in the
shower chair: AIn this case implementation of a
safety belt while showering would have constituted an appropriate measure. . . .
[S]he would not have fallen . . . had she been restrained . . . .  Appropriate restraint would certainly have
reduced the chances of [Joyce] falling . . . .@  These statements are
sufficient to inform Appellants of the specific conduct Vaden has called into
question.  See Palacios, 46 S.W.3d
at 879.  We therefore hold that Massey=s report set out the applicable
standard of care with sufficient specificity to pass section 74.351 muster.

c.      Conclusory
and speculative

Appellants
argue that Massey=s report is conclusory and
speculative, pointing to statements in her report such as Ait appears that [Joyce] fell and was
injured,@ Ait seems reasonable to believe that appropriate safety
precautions were not implemented,@ Ait seems reasonable to infer that she
would not have fallen . . . had she been restrained,@ and Ano records to the contrary have been provided to me.@ 
Appellants contend that Massey piles inference upon inference to create
a mere possibility that Appellants= nurses breached a standard of care and that the absence of
records of an activityCin this case, restraining Joyce in
the shower chairCwill not support an inference that
she was not, in fact, restrained.








The
rules of evidence allow an expert to draw inferences from the underlying facts
or data.  See Tex. R. Evid. 703,
705.  Section 74.351 does not prohibit
experts from making inferences based on medical history.  Marvin, 2008 WL 2579824, at *4.  Moreover, the absence of an entry in the
records of a regularly conducted activity is admissible to show the
nonoccurrence of the matter.  Tex. R.
Evid. 803(7).  Thus, Massey=s inferences, and the fact that she
draws some of them from what is not in Joyce=s medical records, do not render her
report defective.








The
cases Appellants rely on for the opposite conclusion are distinguishable.  In Strom v. Memorial Hermann Hospital
System, the First Court of Appeals held that two expert reports failed to
meet section 74.351=s requirements because they
completely failed to set out a standard of care.  110 S.W.3d 216, 223 (Tex. App.CHouston [1st Dist.] 2003, no
pet.).  By contrast, much of Massey=s report is devoted to setting out
the standards of care, and we have already held that her report set out the
standards of care with sufficient specificity. 
In Lopez v. Sinha, the Fourteenth Court of Appeals held that a
report was deficient because it recited a resultCAcomplete evacuation of bile@Cbut did not include specific information about what the
defendant should have done differently to achieve that result.  No. 14‑05‑00606‑CV, 2006 WL
2669355, at *4 (Tex. App.CHouston [14th Dist.] Sept. 19, 2006,
no pet.). Massey=s report includes specific
information about what Appellants= staff should have done to prevent the fall, namely, restrain
Joyce in the shower chair.   In the third
case cited by Appellants, Gray v. CHCA Bayshore, L.P., the first court
deemed a report deficient because it did Anot state with any specificity how [the defendant=s] departure from the standard of
care caused [the patient=s] knee injury.@ 
189 S.W.3d 855, 860 (Tex. App.CHouston [1st Dist.] 2006, no pet.) (emphasis added).  Gray is inapposite because, as we
discuss below, Vaden does not rely on Massey=s report to establish causation.

Further,
even though Massey=s report draws inferences from the
medical records, it satisfies the two key requirements of an expert report
identified by the supreme court in Palacios by (1) informing the
Appellants of the specific conduct Vaden has called into questionCnamely, the failure of Appellants= staff to prevent Joyce=s fall from the shower chairCand (2) providing a basis for the
trial court to conclude the claims are meritorious.  See Palacios, 86 S.W.3d at 475.  We therefore hold that her report is not
conclusory and speculative.

d.      Causation








Finally,
Appellants argue that Massey is not qualified to render an opinion regarding
causation because under section 74.351(r)(5)(C), only a physician may render an
opinion regarding causation.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(r)(5)(C); Kelly v. Rendon, 255 S.W.3d 665, 675
(Tex. App.CHouston [14th Dist.] 2008, no
pet.).  Vaden concedes this point and
relies on Dr. Laughlin=s report to address causation.  Therefore, we turn now to Dr. Laughlin=s report to determine whether it
supplies the opinion on causation that Massey=s report cannot.

2.             
Dr.
Laughlin=s report

Dr.
Laughlin=s report states, in its entirety,

After reviewing the records extensively, I believe in
all reasonable and medical probability that the accident of September 12, 2005
caused the fracture of this patient=s right non‑displaced acetabular and findings
suspicious for a nondisplaced and nonimpacted femoral neck fracture.

 

Some disagreement in chart about orthopedic diagnosis
and CT report used as defin[i]tive. 

 

Dr. Laughlin=s curriculum vitae is attached to his
report.

Appellants
contend that Dr. Laughlin=s report is defective for several
reasons.  First, as they did with regard
to Massey=s report, Appellants argue that Dr.
Laughlin=s report is deficient because it does
not identify either Appellant by name. 
But as we noted in connection with Massey=s report, an expert report need not mention a defendant by
name when the plaintiff asserts only vicarious liability claims against the
defendant.  See Dale, 188 S.W.3d
at 879.








Second,
Appellants fault Dr. Laughlin=s report for failing to Aidentify any alleged negligence of
either Appellant.@ 
But section 74.351(i) specifically provides that a plaintiff need not
support both liability and causation in a single expert report:  ANothing in this section shall be construed to mean that a
single expert must address all liability and causation issues with respect to
all physicians or health care providers or with respect to both liability
and causation issues for a physician or health care provider.@ 
Tex. Civ. Prac. & Rem. Code Ann. ' 74.351(i) (emphasis added). 
Because section 74.351(i) allows a plaintiff to address the required
elements with more than one report, a plaintiff=s case will not be dismissed simply because each individual
report, viewed on its own, does not fully address each statutory element.  Heart Hosp. of Austin v. Matthews, 212
S.W.3d 331, 335B36 (Tex. App.CAustin 2006), aff=d, 262 S.W.3d 316 
(Tex. 2007).  Instead, the trial
court must look at all of the reports served by the plaintiff and determine if,
viewed as a whole, the reports together address each of the required
elements.  Id.








Vaden
relies on Dr. Laughlin=s report only for causation;
therefore, Dr. Laughlin need not address Appellants= vicarious liability by discussing
the applicable standards of care or breach of those standards.  See Tex. Civ. Prac. & Rem. Code
Ann. ' 74.351(i).  Likewise, Appellant=s third argument, that Dr. Laughlin Adoes not explain the basis of his
statement by linking his conclusions to the facts of the case,@ does not take into account Massey=s report.  Dr. Laughlin=s report says that in reasonable medical probability and
based on the medical records, Joyce=s Aaccident@ on September 12 caused her hip
fracture.  We know from Massey=s report that the Aaccident@ on September 12 was Joyce=s fall from the shower chair.  The two reports, when read together,
adequately link Dr. Laughlin=s conclusion that the Aaccident@ caused Joyce=s injury to the fall from the shower
chair identified in Massey=s report.

Appellants
next fault Dr. Laughlin=s report for being conjectural
because it states that the accident caused Afindings suspicious for a nondisplaced and nonimpacted
femoral neck fracture.@ 
But in making this argument, Appellants ignore the middle part of the
sentence in question, in which Dr. Laughlin states that the accident Acaused the fracture of this patient=s right non-displaced acetabular.@ 
Even if the words Afindings suspicious for a . . .
fracture@ suggest only a conjectural or
possible injury, the words Acaused the fracture@ link Dr. Laughlin=s opinion on causation to a real
injury.








Appellants
further contend that Dr. Laughlin=s report is deficient because Vaden alleged that Joyce
suffered a Aserious and disabling injury,@ but the report does not state that
an acetabular fracture is serious or disabling. 
Vaden alleged, AAs a result [of Appellants= staff=s failure to strap Joyce into the chair, she] slipped out of
the chair and onto the hard floor, sustaining serious and disabling injuries. .
. . Azle Manor failed to discover [her] fractured bones from the fall
until more than seven [7] days later.@ [Emphasis added.]  It
is apparent that the fracture referenced in Dr. Laughlin=s report is the Aserious and disabling injury@ alleged in Vaden=s petition.  Appellants cite our opinion in Windsor v.
Maxwell for the statement that Athe report must support the cause of action alleged by the
plaintiff in its pleadings.@ 
121 S.W.3d 42, 51 (Tex. App.CFort Worth 2003, pet. denied) (holding report deficient when
plaintiff alleged that surgeon pierced cerebral artery with catheter but expert
reported only that surgeon caused reduced blood flow through the artery being
catheterized).  In this case, Vaden
alleged that a fall caused a fracture, and Dr. Laughlin opined that a fall
caused a fracture.  Thus, his report
supports the cause of action Vaden alleged in his pleadings.








Finally,
Appellants argue that Vaden did not establish Dr. Laughlin=s qualifications to render an opinion
about proximate cause.  Section 74.351
provides that a Aphysician who is otherwise qualified
to render opinions on such causal relationship under the Texas Rules of
Evidence@ may render an expert report on
causation.  Tex. Civ. Prac. & Rem.
Code Ann. ' 74.351(r)(5)(C).  Section 74.001 defines Aphysician@ as Aan individual licensed to practice medicine in this state.@ 
Id. ' 74.001(23)(A) (Vernon 2005).  To be so qualified under the Texas Rules of
Evidence, an expert must have knowledge, skill, experience, training, or
education regarding the specific issue before the court that would qualify the
expert to give an opinion on that particular subject.  Broders v. Heise, 924 S.W.2d 148, 153
(Tex. 1996) (citing Tex. R. Evid. 702). 
A trial court has broad discretion in determining whether expert
testimony is admissible.  Mack Trucks,
Inc. v. Tamez, 206 S.W.3d 572, 578 (Tex. 2006).








Dr.
Laughlin=s curriculum vitae recites that he is
an osteopathic surgeon certified by the American College of Osteopathic
Surgeons and the American Osteopathic Academy of Orthopedic Surgeons.  He graduated from the College of Osteopathic
Medicine in Kansas City, Missouri, in 1965 and completed an internship and
several residencies at osteopathic hospitals. 
Dr. Laughlin has current privileges at Renaissance General Hospital and
John Peter Smith Network Hospital, is the assistant supervisor of the
orthopedic resident program at John Peter Smith Hospital, and is a senior
member of the team that evaluates orthopedic surgeons to determine if they are
qualified for certification by the American College of Osteopathic
Surgeons.  He is the medical director of
Q-Plus Outpatient Surgery Center of Grand Prairie.  He also served as a surgeon for various
branches of the military from 1969 through 2001.  Dr. Laughlin=s scholarly publications, including works titled ACommonly Misdiagnosed Fractures,@ AFractures in Children,@ AFractures of the Elbow,@ and AFractures of the Talus,@ show an interest in and experience with bone fractures.

Appellants
argue that Dr. Laughlin is not a Aphysician@ because his curriculum vitae does
not state that he is licensed to practice medicine in Texas.  The facts that he holds staff privileges at
two area hospitals and serves as the medical director of a surgery center
indicate that he is licensed to practice medicine in Texas.

Appellants
next argue that Dr. Laughlin is not qualified to render expert testimony under
rule of evidence 702 because his curriculum vitae Adoes not state that he specializes in
fractures in geriatric patients or that he specializes in fractures of the hip.@ 
Nothing in rule 702 requires such particularized specialization to
qualify as an expert.  The trial court
could have reasonably concluded from Dr. Laughlin=s curriculum vitae that he had the knowledge, skill,
experience, education, or training to render a causation opinion as simple and
straightforward as the one in this case, namely, that Joyce=s fall from the shower chair
fractured her acetabulum.  See Mosely
v. Mundine, 249 S.W.3d 775, 779B80 (Tex. App.CDallas 2008, no pet.) (holding record
sufficient to support trial court=s conclusion that emergency room internist was qualified to
furnish report under rule 702 and section 74.351 concerning treatment and
prognosis for cancer based on expert=s education, experience, and training).








Appellants
further challenge Dr. Laughlin=s qualifications as an expert because
his report Adoes not identify the methodology
used to reach his conclusion@ and is therefore unreliable.  See Mack Trucks, 206 S.W.3d at 578 (AAn expert witness may testify
regarding >scientific, technical, or other
specialized= matters if . . . the expert=s opinion is . . . based on a
reliable foundation.@). 
Dr. Laughlin=s report does identify his
methodology: he reviewed the medical records and concluded that the fall caused
the fracture.  It is difficult to imagine
what other methodology a physician would employ to determine the cause of
broken bone.

                                                Conclusion








Read
together, Massey=s and Dr. Laughlin=s reports (1) inform the defendants
of the specific conduct Vaden has called into question and (2) provide a basis
for the trial court to conclude his vicarious liability claims are
meritorious.  See  Palacios, 46 S.W.3d at 875.  Both Massey and Dr. Laughlin appear to be qualified
to render the opinions set out in their reports.  We therefore hold that the trial court did
not abuse its discretion by determining that the reports represent an objective
good faith effort to comply with the definition of an expert report in the
statute with regard to Vaden=s vicarious liability claims against
Appellants.  See Tex. Civ. Prac.
& Rem. Code Ann. ' 74.351(l).  But we hold that the trial court did abuse
its discretion by denying Appellants= motion to dismiss with regard to Vaden=s direct liability claims, which both
reports wholly failed to address.  We
therefore overrule Appellants= sole issue in part and sustain it in
part.  We affirm that portion of the
trial court=s order denying Appellants= motion to dismiss with regard to
Vaden=s vicarious liability claims.  We reverse the portion of the trial court=s order denying Appellants= motion to dismiss Vaden=s claims based on Appellants= direct liability, and we render
judgment dismissing those claims with prejudice.[3]

 

 

ANNE GARDNER

JUSTICE

 

PANEL:  GARDNER,
WALKER, and MCCOY, JJ.

 

DELIVERED: 
November 6, 2008











[1]See Tex. R. App. P. 47.4.





[2]Because of this
disposition, we need not consider Appellants= complaint that Massey=s report does not
establish her qualifications to offer an opinion regarding Vaden=s direct negligence
claims.  See Tex. R. App. P. 47.1.





[3]Because Vaden did timely
serve an expert report in regard to a portion of his claims, we need not
address Appellants= request for attorney=s fees.  See Univ. of Tex. Med. Branch v. Railsback,
259 S.W.3d 860, 870 (Tex. App.CHouston [1st Dist.] 2008, no pet.) (declining to
address appellant hospital=s request for attorney=s fees in appeal from
denial of section 74.351 motion to dismiss when expert report addressed
vicarious liability claims but not direct liability claims); Tex. Civ. Prac.
& Rem. Code Ann. ' 74.351(b) (stating that,
if Aexpert report has not
been served within the period specified by [s]ubsection (a), the court, on the
motion of . . . health care provider, shall . . . award[ ] . . .
reasonable attorney=s fees@).